UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI



MULTIPLAN, INC. and PRIVATE *
HEALTHCARE SYSTEMS, INC. *
    Plaintiffs, * CIVIL ACTION NO. 1:14cv315LG-RHW
 *
v. *
 *
STEVEN W. HOLLAND *
D/B/A PHYSICAL THERAPY *
CLINIC OF GULFPORT and *
KEVIN BARRETT D/B/A *
QUEST FINANCIAL RECOVERY *
SERVICES *
    Defendants *

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND OTHER RELIEF

Plaintiffs, MultiPlan, Inc. and Private Healthcare Systems, Inc. ("Plaintiffs"), by and through counsel, respectfully request this Court to issue a Declaratory Judgment, Preliminary and Permanent Injunctive Relief, and Other Relief. In support thereof, Plaintiffs allege the following:

### PARTIES

1. Plaintiff Private Healthcare Systems, Inc. is a Delaware corporation with its principal place of business in New York, New York.

2. Plaintiff MultiPlan, Inc. is a New York corporation with its principal place of business in New York, New York.

3. Defendant Steven W. Holland is an adult resident of the State of Mississippi. Holland, d/b/a Physical Therapy Clinic of Gulfport (hereinafter "Holland"), may be served with process at 101 Dogwood Drive, Gulfport, MS 39507-1941.

Page 1 of 20

4. Defendant Kevin Barrett, d/b/a Quest Financial Recovery Services ("Quest"), has held itself out as "the authorized agent of Steven W. Holland d/b/a Physical Therapy Clinic of Gulfport in Gulfport, Mississippi." Upon information and belief, Quest is a sole proprietorship that may be served through its "owner/operator" Kevin Barrett at its business address, 3824 Cedar Springs Road #801-1293, Dallas TX 75219 in Dallas County, Texas.

## JURISDICTION AND VENUE

5. The Plaintiffs seek a declaration of their rights and obligations as the same relate to a Participating Professional Agreement executed with Defendant Holland and certain actions taken by or actions intended to be taken by Holland and his Agent, Defendant Quest.

6. This Court has jurisdiction over the subject matter of this litigation pursuant to 28 USC § 2201-02, which is implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

7. This Court has jurisdiction pursuant to 28 USC § 1332 in that the parties are citizens of different states and the potential harm and damages to the Plaintiffs arising from the conduct of Holland and Holland's Agent Quest exceeds this jurisdictional amount of $75,000 exclusive of interest and costs.

8. This court has personal jurisdiction over Defendant Kevin Barrett, d/b/a Quest Financial Recovery Services, pursuant to the Mississippi Long Arm Statute, Miss. Code Ann. §13-3-57 because Quest as alleged "agent" for Holland has made a contract with a resident of this state to be performed in whole or in part in this state; Quest has committed torts in whole or in part in this state against Plaintiffs; and Quest has done business and performed work and services in this state.

9. An actual controversy exists between the parties.

10. Venue is proper in this Court, including, but not limited to, pursuant to 28 USC § 1391 because Defendant Holland resides in the Southern Division of the Southern District of Mississippi, because a substantial part of the events giving rise to these claims occurred in the Southern Division of the Southern District of Mississippi and/or because Defendants are subject to this court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

11. Private Healthcare Systems, Inc. ("PHCS") is a network-only preferred provider organization ("PPO"), which contracts on the one hand with health care providers ("Health Care Providers"), such as hospitals, physicians and ancillary providers; and on the other hand, with health plans ("Health Plan Payers"), including insured plans and self-funded plans.

12. By contracting with Health Care Providers and Health Care Payers, PHCS serves as a middleman establishing a network of providers that agree to discount their rates for medical services they render; and PHCS then provides access to the Health Care Payers to obtain the discounts offered by the Health Care Providers.

13. PHCS and Holland entered into a Participating Professional Agreement[1] ("Agreement") on or about September 1, 2006.

14. In the Agreement, Holland, defined as the "Participating Professional,"[2] agreed to discount his rates off of his normal billed charges to the clients of PHCS in return for PHCS encouraging its clients to have client participants seek care from Holland as a contracted provider, together with other benefits as set forth in the Agreement.

---

[1] The Agreement contains a confidentiality provision; thus, PHCS will not attach the full Agreement to this pleading. Instead, only those portions of the Agreement that are relevant to this dispute are attached hereto as composite **Exhibit "A"**.

[2] **Exhibit "A"**, Section 1.4.

Page 3 of 20

15. The Agreement was at the time of execution and continues to be a legally binding and enforceable contract.

16. Holland agreed to be bound by the terms of the Agreement.

17. In October 2006, MultiPlan, Inc. ("MPI") acquired PHCS.

18. In or about 2007, MPI and PHCS provided written notice of MPI's acquisition of PHCS to Holland at Holland's business address.

19. The 2007 notice to Holland explained that MPI's acquisition of PHCS resulted in Holland's Agreement being amended to: (a) add a network product; (b) to add network clients; and (c) to adjust rates payable to Holland under the Agreement.

20. These changes were authorized by the Agreement, which provided that upon prior written notice, PHCS may in its sole discretion modify the PHCS provider network and designate individual products in which Holland agreed to participate.[3]

21. Thus, the 2007 notice satisfied Section 3.7 of the Agreement and provided Holland with prior written notice from PHCS of the changes to be made to the terms and conditions of the Agreement.

22. Holland did not respond to the notice.

23. Accordingly, after MPI acquired PHCS, Holland's Participating Provider Agreement with PHCS was amended to include MPI and MPI's separate payer clients received access to PHCS/MPI's provider network, including Holland.

24. On April 25, 2011, MPI provided a second notice to Holland entitled "Important Contract Update."[4]

---

[3] **Exhibit "A**, Section 3.7.
[4] *See* April 25, 2011 Letter from MPI to Holland, attached hereto as **Exhibit "B."**

Page 4 of 20

JM MPP 1321546 v8
2917223-000083 08/13/2014

25. In the 2011 notice, MPI reminded Holland of all of the products that Holland was at that time participating in, including "MulitPlan['s] Workers' Compensation Network."[5]

26. The 2011 notice also advised Holland of changes to the rates payable to Holland under the Agreement.[6]

27. Again, these changes were authorized by the Agreement, which permitted the rates payable to Holland under the Agreement to be modified by PHCS upon sixty (60) days prior written notice to Holland, unless Holland rejected the modifications through written notice to PHCS.[7]

28. Holland never rejected any of PHCS's rate modifications or any amendments to the network of products to which Holland's discount applied.

29. Because the notices provided to Holland complied with the Agreement, MPI applied Holland's discounts to claims received from MPI's payer clients.

30. Again, the Agreement authorized PHCS to modify or expand the network of payers and the list of products for which Holland offered discounts as a participant in PHCS' provider network.

31. Consistent with the Agreement, MPI applied the discounts offered by Holland to PHCS' provider network and to MPI's provider network without complaint or objection by Holland.

32. Although the Agreement did not expressly address Holland's discount applying to workers' compensation products, through the operation of the various contractual provisions and the notices described herein, the application of the discount was authorized.

---

[5] *Id.*
[6] *See* **Exhibit B**, MPI's April 2011 Letter to Holland.
[7] **Exhibit "A"**, Section 7.4.

Page 5 of 20

JM MPP 1321546 v8
2917223-000083 08/13/2014

33. The language of the Agreement informed Holland that a network client/payer that offered a workers compensation plan would have access to Holland's discount, because Holland's discount applied to any "benefit or plan or other health plan" within the network, including a workers compensation plan.

34. In addition, Holland received notice from MPI that Holland's discounts were being offered to MPI's workers' compensation products.

35. In return for granting a discount to MPI's clients, Holland received the benefit of increased patient volume and other benefits.

36. Upon information and belief, Holland became dissatisfied with discounts that were given to MPI's workers' compensation clients under Holland's Agreement with PHCS.

37. On or about September 25, 2012, the Agreement between Holland and MPI was terminated.

38. Thereafter, Quest Financial Recovery Services ("Quest"), as Holland's disclosed agent, sent correspondence to Plaintiffs requesting payment for disputed workers' compensation claims submitted by Holland for services rendered according to the Agreement.

39. Specifically, Holland sent a "Commercial Affidavit" (hereafter "Commercial Affidavit") to MPI dated January 26, 2014.[8]

40. The Commercial Affidavit included a statement that Quest was the authorized agent of Holland, and thus was expressly authorized to act on Holland's behalf.

41. By way of the Commercial Affidavit, Quest as agent for Holland demanded restitution from MPI in the amount of $100,635.50 to compensate Holland for discounts applied to workers' compensation claims.

---

[8] *See* Commercial Affidavit to MPI, attached hereto as **Exhibit "C."**

Page 6 of 20

JM MPP 1321546 v8
2917223-000083 08/13/2014

42. The Commercial Affidavit threatened that failure by MPI to respond within thirty (30) days would be "deemed to invoke the doctrine of [estoppel by acquiescence] and thereby will constitute an affirmation of all statements made herein, allowing for the recovery, in Commerce, for damages, penalties, and costs."[9]

43. If MPI did not respond within thirty (30) days, the Commercial Affidavit threatened that Holland would file a "Commercial Lien" (hereafter "Commercial Lien") against MPI's real and personal property, along with the real and personal property of MPI's officers.[10]

44. Although a "Commercial Lien" is not only unknown to Mississippi law and considered null, void and without legal effect, the irreparable damage to business reputation, the effort, cost and potential litigation to remove any such liens promises to create irreparable harm for which there is no adequate remedy at law. Moreover, such a "Commercial Lien" by Quest's own admission is not only in derogation of the Agreement, it seeks to deprive Plaintiffs of any remedy at law or other legal recourse.

(a) First, the Commercial Affidavit[11] described the "Commercial Lien" process as one that "cannot be removed by any attorney or judge."[12]

(b) Next, the Commercial Affidavit advises that a Commercial Lien[13] "can only be satisfied by an affidavit of a point-by-point rebuttal, resolution by jury, or payment."[14]

(c) The Commercial Affidavit further clarified that the Commercial Lien process is "NON-JUDICIAL and pre-judicial" because "[n]o judge, court, government or

---

[9] *Id.*
[10] *Id.*
[11] A Commercial Affidavit is not a recognized document under Mississippi law.
[12] *See* **Exhibit C**.
[13] The Commercial Lien is not a document that is recognized under Mississippi law.
[14] *See* **Exhibit C**.

Page **7** of **20**

JM MPP 1321546 v8
2917223-000083 08/13/2014

any agencies thereof, or any other third parties whatsoever, can abrogate anyone's affidavit of truth."[15]

45. On March 13, 2014, Quest, as agent for Holland, continued its harassment of MPI by sending a "Notice of Fault and Opportunity to Cure"[16] (hereinafter "Notice of Fault") to Mark Tabak (hereinafter "Tabak"), the Chief Executive Officer ("CEO") of MPI and Tabak received the Notice of Fault.

46. The Notice of Fault[17] advised MPI's CEO that MPI was in a "condition of fault" for failure to respond within thirty (30) days of receiving the Commercial Affidavit.[18]

47. The Notice of Fault limited MPI's time to pay the settlement demand or rebut the claims in the Commercial Affidavit to merely twenty (20) days.[19]

48. According to the Notice of Fault, Quest, on behalf of Holland, asserted that if MPI failed to respond within twenty (20) days, a "Notice of Default"[20] would be issued and would have the effect of a "Commercial Lien and Default Judgment" in accordance with "FEDERAL RULES OF CIVIL PROCEDURE, TITLE VII, JUDGMENT, RULE 55, DEFAULT; DEFAULT JUDGMENT."[21]

49. On March 13, 2014, MPI responded to Holland's Commercial Affidavit and advised Quest that MPI's original determination that the workers' compensation discounts were

---

[15] *Id.*
[16] *See* Notice of Fault and Opportunity to Cure, attached hereto as **Exhibit "D."**
[17] Notice of Fault is not a document recognized under Mississippi law.
[18] *See* **Exhibit D**.
[19] *Id.*
[20] The Notice of Default described within this paragraph is not a process recognized by Mississippi law or adopted by the Federal Rules of Civil Procedure.
[21] *See* **Exhibit D**, supra.

Page **8** of **20**

JM MPP 1321546 v8
2917223-000083 08/13/2014

valid and would stand based on the fact that workers' compensation was included as part of Holland's amended Agreement with PHCS.[22]

50. On or about April 10, 2014, Quest, as agent for Holland, sent another harassing letter entitled "Second Notice of Fault and Opportunity to Cure" (hereinafter "Second Notice of Fault") to Tabak, advising that MPI was in default for failure to respond to the Commercial Affidavit.[23]

51. Quest again limited MPI's response time to ten (10) days.[24]

52. In the Second Notice of Fault, Holland revised his settlement demand to include Quest's fees to "enforce MultiPlan to comply with its contract," in the amount of $5,500.00. Thus, Quest's settlement demand on behalf of Holland was revised to $121,616.78.[25]

53. By this time, MPI received notice that Quest, as agent for Holland, had begun harassing MPI's clients with a barrage of nonsensical letters containing broad and pernicious threats.

54. On April 11, 2014 and April 17, 2014, MPI sought to end Quest's relentless harassment and interference with MPI's business relationships by demanding that Quest cease and desist from contacting MPI, its corporate officers or its clients.[26]

55. MPI again reiterated its position that the discounts MPI offered to its clients for Holland's services were lawful and valid according to the specific provisions of the Agreement.[27]

56. On June 16, 2014, Quest as agent for Holland sent an "Agreement to Claims/Terms and Offer to Opt-Out" (hereafter "Offer to Opt-Out") to Tabak and MPI's VP and

---

[22] *See* March 13, 2014 letter from MPI to Quest, attached hereto as **Exhibit "E."**
[23] *See* Second Notice of Fault and Opportunity to Cure, attached hereto as **Exhibit "F."**
[24] *Id.*
[25] *See* **Exhibit F.**
[26] *See* April 11, 204 and April 17, 2014 letters from MPI to Quest, attached hereto as **Exhibits "G" and "H,"** respectively.
[27] *See* Exhibits **G and H**.

COO, Michael Ferrante, which summarized the previous notices sent to MPI and further advised MPI that it was in a condition of "estoppel."[28]

57. The Offer to Opt-Out also made a series of threats against the business operations of MPI's clients such as Coventry Healthcare Workers' Compensation, Inc.[29]

58. Importantly, Quest as agent for Holland increased the settlement demand to $1,054,315.28 to resolve Holland's dispute.[30]

59. Quest is not a law firm, and upon information and belief the signatory of Quest's letters, Kevin Barrett, is not licensed to practice law in any U.S. jurisdiction. Quest's threatening letters and affidavit made legal arguments and proclaimed themselves to have the force of law.[31] On information and belief, Quest's services in this regard have been for a fee or reward.[32]

60. To stop Quest's pattern of harassment, counsel for MPI requested that both Holland and his agent Quest direct all future correspondence to MPI's counsel.[33]

61. MPI further demanded that Holland's agent Quest cease and desist communications with anyone at MPI or its payer-clients, including Coventry and EMC Insurance.[34]

62. On July 14, 2014, Quest, as agent for Holland, sent correspondence to MPI's counsel explaining, clarifying and defending the Commercial Lien process:

> [A]n unrebutted Commercial Affidavit becomes a judgment in commerce without the need of a court or tribunal, in which, a default judgment may

---

[28] *See* Agreement to Claims/Terms and Offer to Opt-Out, attached hereto as **Exhibit "I."**
[29] *Id.*
[30] *Id.*
[31] *See* Quest Documents listed as **Exhibits C, D, F** and **I**.
[32] In **Exhibit E**, Holland increases his settlement demand by $5,000 to cover Quest's fees.
[33] *See* June 27, 2014 letter from counsel for MPI to Quest, attached hereto as **Exhibit "J."**
[34] *Id.*

be entered by a clerk as in accordance to Federal Rule of Civil Procedure 55.[35]

***

A Commercial Affidavit is a mode of interacting, doing business, or resolving disputes whereby all matters are executed under oath, certified on each party's commercial liability by sworn affidavit, or what is intended to possess the same effect, as true, correct, and complete, not misleading, the truth, the whole truth and nothing but the truth.

The difference between a Commercial Affidavit and an ordinary affidavit is that one cannot lie by omission. When a Commercial Affidavit is served on a party, that party must serve one in return with a rebuttal of every single point made in the served Commercial Affidavit. As in any affidavit of truth, the party served cannot lie or be deceitful in any way. And, if the party fails to respond with a point-by-point rebuttal within a reasonable time; under the common law of acquiescence, the claims made become truth in law that cannot be later challenge or counterclaimed as in Georgia v. South Carolina, 497 U.S. 376 (1990). Therefore, an unrebutted Commercial Affidavit will stand as Truth in Law.

And so, after the lawful period passes without rebuttal (with proof) in the form of an affidavit, a Commercial Lien (aka common law lien) can be served to the offending party filed at the courthouse(s) for the county(ies) in which the offender has property. The lien must be accompanied by (or must contain) a Commercial Affidavit, containing a ledger of damages suffered and also cited law(s), action(s), or obligation(s) that gave rise to the damages.

Thus, the aim of the Commercial Affidavit process is for a non-judicial summary process of rights, remedies and recourses pursuant to rights under Commercial Law which is governed by rules and guidelines of the Uniform Commercial Code. **The Mosaic Law is our foundation of this process, e.g., Truth is sovereign and the thief who is caught must pay back seven times what he stole.** Hence, we are confident that both the Truth and the Law are on our side in this matter.[36]

63. Quest's July 14, 2014 correspondence also advised that Holland and Quest would continue to annoy and harass MPI with direct communications to MPI and its clients as "no

---

[35] *See* July 14, 2014 letter from Quest to counsel for MPI, attached hereto as **Exhibit "K."**
[36] *See* **Exhibit K**, supra (Emphasis added.)

Page 11 of 20

JM MPP 1321546 v8
2917223-000083 08/13/2014

attorney or agency, or any other agent of any kind can respond to a Commercial Affidavit on behalf of the parties involved in the dispute."[37]

64. True to its word, Quest sent direct communications to EMC Insurance and its President and Executive Vice President on July 24, 2014 entitled "Letter of Intent to File Lien."[38]

65. The Intent to File Lien advised that Holland and his agent Quest would file a lien against the business property of EMC Insurance for the purpose of securing payment to Holland in the amount of $180,993.24, due to a "CONSENSUAL DEFAULT of a Commercial Affidavit in the matter concerning EMC Insurance's unauthorized discounting of Mr. Holland's workers' compensation claims and illegally withholding payments due per the Mississippi Workers' Compensation Law."[39]

66. Quest, as agent for Holland, also made similar threats to MPI's client Coventry.

67. On August 8, 2014, Quest indeed filed (recorded) a lien against Coventry with the Maryland Department of Assessment and Taxation.[40]

68. The Plaintiffs PHCS and MPI now reasonably believe that without judicial intervention Holland and Quest will follow through with every threat made by them to interrupt the business operations of the Plaintiffs and the Plaintiffs' clients and to encumber the business assets of same.

69. Obviously, the Defendants have interpreted or construed the Holland Agreement with PHCS in a manner that is disputed by the Plaintiffs.

---

[37] *Id.*
[38] *See* Letter of Intent to File Lien, attached hereto as **Exhibit "L."**
[39] *Id.*
[40] *See* Commercial Lien filed in Maryland, **Exhibit "M"**.

Page **12** of **20**

JM MPP 1321546 v8
2917223-000083 08/13/2014

70. Rather than resolve this dispute in a court of competent jurisdiction, Holland and his agent Quest have utilized an unlawful process that is harmful to the ongoing business operations of the Plaintiffs and their clients.

71. The Commercial Lien process utilized by Holland is null, void and without legal effect.

## COUNT I
## DECLARATORY ACTION

72. The Plaintiffs incorporate by reference the averments paragraphs 1 through 71 above as if fully set forth herein.

73. The Agreement signed by Holland is a legally enforceable contract.

74. The Agreement was validly amended to extend to MPI.

75. By the terms of the Agreement, Holland is not entitled to additional compensation from Plaintiffs or any of Plaintiffs' clients arising from or relating to services Holland provided pursuant to the Agreement or the Amended Agreement.

76. Plaintiffs are entitled to a declaration that, among other things:

(a) The Agreement authorized PHCS to apply Holland's discount to "any insurance policy, benefit plan or other health plan or program" within the PHCS network;

(b) The Agreement authorized PHCS to modify (expand) its payer network and products offered, which correspondingly expanded the number of payers permitted to apply the Holland discount and the number of products subject to the Holland discount;

(c) MPI acquired PHCS;

JM MPP 1321546 v8
2917223-000083 08/13/2014

(d) In or about 2007, MPI provided notice to Holland that Holland's discount would apply to certain of MultiPlan's products including "MultiPlan['s] Workers Compensation Network and to MPI's clients;

(e) Holland did not reject these contract modifications;

(f) Thus, Holland contractually agreed to expand his discount to the products and payers identified in MPI's notice;

(g) The Agreement authorized PHCS, upon sixty (60) days prior written notice to Holland, to adjust the rates payable to Holland unless Holland rejected the modifications through written notice to PHCS;

(h) PHCS provided such notice to Holland in 2011 and Holland did not reject these contract modifications;

(i) Thus, Holland contractually agreed to modify the size of the discount that he offered within the PHCS provider network; and

(j) All rates paid to Holland pursuant the Agreement (as amended) were consistent with Mississippi law.

77. For these reasons, Plaintiffs request that this Court grant declaratory relief resolving the controversy between the parties in favor of the Plaintiffs by holding that, at all relevant times, MPI had the contractual right to offer discounts given by Holland in the Agreement to its clients in a workers' compensation setting.

## COUNT II
## INJUNCTIVE RELIEF

78. The Plaintiffs incorporate by reference the averments paragraphs 1 through 77 above as if fully set forth herein.

79. The process by which Holland is attempting to resolve the dispute over workers' compensation discounts is an unlawful process.

80. Due to the unpredictability and unfamiliarity with the unlawful "Commercial Lien" process, and any and all other extra judicial efforts by Holland and Quest, Plaintiffs submit that Plaintiffs will suffer immediate and irreparable injury, loss or damage.

81. As is the case with the Commercial Lien filed in Maryland against Plaintiffs' client Coventry, state officials may permit the filing of these liens, even though Commercial Liens have no legal effect. In doing so, state officials will give these Commercial liens legal effect to which they are not entitled. As a result, parties against whom Commercial Liens are filed will have their credit impaired and will be required to spend unnecessary resources having these Commercial Liens removed.

82. Plaintiffs' business assets and the assets of its corporate officers are at risk of being encumbered by unlawful Commercial Liens.

83. In addition, Plaintiffs' business reputation including its business relationship with its clients has and will continue to suffer and be irreparably harmed as a result of Holland and Quest's relentless and unlawful harassment that arises from Holland's dispute with Plaintiffs about the terms and scope of the Agreement.

84. Unless relief is granted by this Court on a temporary, preliminary, and permanent basis, Plaintiffs are likely to lose clients, lose additional opportunities, and irretrievably damage their reputation. Therefore, the damages to Plaintiffs will not readily be compensated by money damages alone. Damages will increase each day that Holland and Quest continue their unlawful, damaging activities. Further, there is no adequate remedy at law, and there is a substantial likelihood that Plaintiffs will prevail on the merits of this Count.

85. Accordingly, to prevent immediate and irreparable harm, Plaintiffs request that this Court grant injunctive relief, enjoining Holland and his officers, agents, employees, representatives, and attorneys or any other person acting in concert or on his behalf including Quest, from filing any lien against Plaintiffs, their officers, agents, employees, clients, representatives and/or attorneys, with the purpose harassment or encumbering their property or any other personal belongings. In particular, the Court should enjoin Holland and Quest from pursuing any extra-judicial remedy based on the alleged "Commercial Law and/or Mosaic Law" upon which they are claiming to rely.

86. To prevent immediate and irreparable harm, Plaintiffs further request that this Court grant injunctive relief, affirmatively directing Holland and his officers, agents, employees, representatives, and attorneys or any other person acting in concert or on his behalf including Quest to remove, withdraw and take all steps necessary to remove any and all liens issued or enrolled against Plaintiffs or their Clients.

87. The Plaintiffs further request that the Court enjoin Holland and Quest from pursuing relief arising from the Agreement by any means other than the present litigation.

## COUNT III
## TORTIOUS INTERFERENCE

88. The Plaintiffs incorporate by reference the averments paragraphs 1 through 92 above as if fully set forth herein.

89. The Defendants' actions as complained of herein have tortiously interfered with Plaintiffs' business relationship with certain of Plaintiffs' payer clients, including, but not limited to EMC Insurance and Coventry.

90. The Defendants' acts as complained of herein were intentional and willful.

91. The Defendants' acts as complained of herein were calculated to cause damage to the Plaintiffs in their lawful business operations.

92. The Defendants' acts as complained of herein were done with the unlawful purpose of causing damage and loss to Plaintiffs' business operations.

93. The Defendants' actions were perpetrated against Plaintiffs' without right or justifiable cause.

94. Plaintiffs have sustained and in the future will sustain injury and loss as a proximate result of Defendants' harassment, threats, malice, communications with Plaintiffs' clients, filing of unlawful Commercial Liens and threatening to file unlawful Commercial Liens.

95. The Plaintiffs demand relief in the manner and amount determined by the trier of fact at trial.

96. Plaintiffs demand punitive damages in an amount to be determined by the trier of fact at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Premises Considered, the Plaintiffs demand a trial on the merits and prays for judgment as follows:

1. That this Court immediately issue a permanent injunction, enjoining Defendant Steven W. Holland d/b/a Physical Therapy Clinic of Gulfport, his officers, agents, representatives, employees and attorneys, and all other persons acting in active concert or on his behalf, specifically including, but not limited to, Quest Financial Recovery Services, from filing a Commercial Lien, or any other lien, legal, non-legal or unlawful proceeding against Plaintiffs, their officers, agents, clients, employees, representatives and attorneys, in any manner so as to harass Plaintiffs and the Plaintiffs' clients or encumber their property or any other belongings.

JM MPP 1321546 v8
2917223-000083 08/13/2014

2. That this Court issue a permanent injunction, enjoining Defendant Steven W. Holland d/b/a Physical Therapy Clinic of Gulfport, his officers, agents, representatives, employees and attorneys, and all other persons acting in active concert or on his behalf, specifically including, but not limited to, Quest Financial Recovery Services, to immediately remove, withdraw and take all steps necessary to remove any and all liens issued or enrolled against Plaintiffs or their Clients.

3. That this Court render a declaratory judgment declaring that the Agreement between PHCS and Holland allowed affiliates of PHCS to access that Agreement and thus, at all relevant times, MPI, as an affiliate of PHCS, was contractually authorized to include Holland as part of MPI's workers' compensation network of providers for purposes of accessing discounts given by Holland under the Agreement;

4. That this Court grant relief to Plaintiffs arising from Defendants' tortious interference with Plaintiffs' business relationships; and

5. For all other relief as is justifiable and equitable in the premises.

Dated this 13th day of August, 2014.

Respectfully submitted,

MARLENA P. PICKERING (MSB 102684)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
Post Office Box 14167
Jackson, Mississippi 39236-4167
Phone: (601) 351-2400
Facsimile: (601) 351-2424
mpickering@bakerdonelson.com

OF COUNSEL:
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
Jackson, Mississippi 39211
Telephone: 601-351-2400
Facsimile: 601-351-2424

# VERIFICATION

STATE OF Massachusetts
COUNTY OF Norfolk

    I, Tara O'Neil, am the Assistant Vice President, Associate Counsel and Director of Provider Contracts for MultiPlan, Inc. and for its subsidiary Private Healthcare Systems, Inc. In that capacity, I am authorized to make this verification on behalf of the Plaintiffs MultiPlan, Inc. and Private Healthcare Systems, Inc. I have read the foregoing Verified Complaint for Declaratory Judgment, Injunctive and Other Relief ("Verified Complaint"). I declare under penalty of perjury that the facts set forth in the foregoing Verified Complaint are true and correct.

Executed this the 12th day of August, 2014.

                                                                                             TARA O'NEIL

JM MPP 1321546 v8
2917223-000083 08/12/2014