IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MULTIPLAN, INC., and PRIVATE
HEALTHCARE SYSTEMS, INC.                                    PLAINTIFFS

v.                                        CAUSE NO. 1:14CV315-LG-RHW

STEVEN W. HOLLAND, doing business as
Physical Therapy Clinic of Gulfport, and KEVIN
BARRETT, doing business as Quest Financial
Recovery Services                                          DEFENDANTS

and

STEVEN W. HOLLAND                              COUNTER-PLAINTIFF

v.

MULTIPLAN, INC., and PRIVATE
HEALTHCARE SYSTEMS, INC.                     COUNTER-DEFENDANTS

MEMORANDUM OPINION AND ORDER
CONCERNING THE PARTIES' MOTIONS TO DISMISS

**BEFORE THE COURT** are the Motion to Dismiss [35] filed by Kevin

Barrett, the Motion to Dismiss Counterclaims of Steven Holland [39] and the

Amended Motion to Dismiss Counterclaims of Steven Holland [43] filed by

Multiplan, Inc. and Private Healthcare Systems, Inc. (hereafter sometimes

collectively referred to as "the plaintiffs"), the Motion to Dismiss [48] and the

Amended Motion to Dismiss [50] filed by Steven Holland, and the Motion to Dismiss

Amended Counterclaims [59] filed by the plaintiffs.  After reviewing the

submissions of the parties and the applicable law, the Court finds that the Motions

to Dismiss filed by Holland and the plaintiffs should be denied.  The Court further

finds that the declaratory judgment claim filed by the plaintiffs and all of the

counterclaims filed by Holland should be stayed pursuant to the arbitration clause in the Participating Professional Agreement entered into by those parties. The Court further finds that the plaintiffs should be required to file a supplemental brief on the issue of whether this Court can exercise personal jurisdiction over Barrett.

## FACTS

Private Healthcare Systems, Inc., is a preferred provider organization that "serves as a middleman establishing a network of providers that agree to discount their rates for medical services rendered . . . ." (Compl. at 3, ECF No. 1). On September 1, 2006, Private Healthcare and Steven W. Holland, a Gulfport physical therapist, entered into a Participating Professional Agreement pursuant to which Holland agreed to provide discounted rates to Private Healthcare's clients, including health insurance carriers. (*Id.* at 3; Agreement, ECF No. 1-2). In October 2006, Multiplan, Inc., acquired Private Healthcare. (Compl. at 4, ECF No. 1). Multiplan and Private Healthcare claim they provided Holland with notice of the acquisition in 2007 and informed him that, as a result of the acquisition, Multiplan's network clients and products would be entitled to receive discounts from Holland under the Agreement. (*Id.*) In 2011, Multiplan claims it reminded Holland that its Workers' Compensation Network should receive discounted rates, and it also notified Holland of changes in the rates payable at that time. (*Id.* at 5). Multiplan asserts that Holland did not reject any of these modifications to the Agreement. (*Id.*) It claims, "Consistent with the Agreement, [Multiplan] applied

the discounts offered by Holland to [Private Healthcare's] provider network and to [Multiplan's] provider network without complaint or objection by Holland." (*Id.*)

The Agreement was terminated on September 25, 2012. (*Id.* at 6). On January 26, 2014, while acting on behalf of Holland, Kevin Barrett sent a Commercial Affidavit to three of Multiplan's officers and threatened to file a commercial lien if certain conditions were not met. (Compl., Ex. C at 4, ECF No. 1-4). In correspondence, Barrett explained:

> Thus, the aim of our Commercial Affidavit process is for a non-judicial summary process of rights, remedies and recourses [sic] pursuant to rights under Commercial Law which is governed by rules and guidelines of the Uniform Commercial Code. The Mosaic Law is our foundation of this process, e.g., Truth is sovereign and the thief who is caught must pay back seven times what he stole. Hence, we are confident that both the Truth and the Law are on our side in this matter.

(Compl., Ex. K at 6, ECF No. 1-12). Barrett also sent two Notices of Fault to Multiplan's chief executive officer, claiming that a notice of default would be issued if Multiplan failed to respond to the Commercial Affidavit by the deadline. (Compl., Ex. D, E, ECF Nos. 1-5, 1-6). Barrett threatened that this notice of default would have the effect of a commercial lien and a default judgment pursuant to Fed. R. Civ. P. 55. (*See id.*)

Multiplan also claims that Barrett harassed its clients with threatening letters. (Compl. at 9, 11, ECF No. 1). For example, Barrett sent a letter of intent to file lien to EMC Insurance on July 24, 2014, and filed or recorded a lien against another Multiplan client in Maryland. (*Id.* at 12). In all correspondence, Barrett

-3-

has claimed to be Holland's authorized agent.

On August 13, 2014, Multiplan and Private Healthcare filed a Verified Complaint against Holland d/b/a Physical Therapy Clinic of Gulfport and Kevin Barrett d/b/a Quest Financial Recovery Services. The plaintiffs have filed a tortious interference with business relations claim against Barrett and Holland, and they seek a declaratory judgment that the discounts applied to services performed by Holland were proper. The plaintiffs also requested injunctive relief, and a preliminary injunction was entered concerning Barrett's conduct on October 21, 2014. (Preliminary Injunction, ECF No. 32).

Holland, who is acting pro se, filed a Counterclaim against Multiplan and Private Healthcare on October 1, 2014 in which he accuses the plaintiffs of silent PPO activity[1] and seeks monetary damages for discounts that he claims the plaintiffs improperly applied for his services. Holland explains:

> In the healthcare insurance industry, a legitimate PPO (Preferred Provider Organization) is a network of healthcare providers who agree to offer discounted fee rates in return for receiving increased patient referrals (patient steerage) . . . .
> Through the silent PPO scheme, insurance payers can buy into the silent PPO database (most likely through another entity like a bill review/repricing vendor) and access the lowest discounted rate of the providers after the healthcare providers provide services to the patient, even though the patient is not directly a member of the PPO plan contracted with the healthcare provider with contractual right to the PPO discounted rate.

---

[1] An explanation of what is considered silent PPO activity can be found in the following opinion: *Roche v. Travelers Prop. Cas. Ins. Co.*, No. 07-CV-302-JPG, 2008 WL2875250 at *1 (S.D. Ill. July 24, 2008). "Essentially, a silent PPO occurs when a payor receives a PPO discount to which he is not entitled." *Id.*

(Counterclaim at 22, ECF No. 16).  He claims that the plaintiffs' decision to impose discounts for services he provides to workers' compensation patients constitutes silent PPO activity, because workers' compensation patients are referred to Holland by their attending physicians, not by any preferred provider organization.  (*Id.* at 21).  On November 12, 2014, Holland filed an Amended Counterclaim containing similar allegations and delineating the following counterclaims: misrepresentation, fraud, wire fraud, false pretenses and cheats, conspiracy, civil conspiracy, wire fraud, unjust enrichment, violations of RICO, and breach of contract.  (Am. Counterclaim at 9, ECF No. 47).  The plaintiffs, Barrett, and Holland have filed various Motions to Dismiss.

## DISCUSSION

## I.  HOLLAND'S MOTION TO DISMISS

### A.  ARBITRATION

Holland asks this Court to dismiss the plaintiffs' claims, because the plaintiffs did not comply with the following ADR provision included in the Agreement:

> In the event of any problems or disputes that may arise under this Agreement, the parties to such problem or dispute will meet and seek resolution in good faith.  Except as specified in Section 2.6, any controversy or claim arising out of or relating to this Agreement or the breach thereof, which is not so resolved, will be settled by binding arbitration in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration . . . .

(Agreement, ECF No. 36-1).[2]

The plaintiffs argue that Holland did not specifically demand arbitration but merely asked the Court to dismiss the plaintiffs' claims for failure to comply with the Agreement's ADR provision.  Since Holland is a pro se plaintiff, the Court has liberally construed his arguments to seek dismissal so that arbitration can be pursued as agreed to by the parties.  *See Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 629 (5th Cir. 2014) ("[W]e liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than parties represented by counsel.").

"[W]hether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakenly provide otherwise."  *Howsam v. Dean Witter Reynolds, Inc.*, 637 U.S. 79, 83 (2002).  In the present case, the parties did not agree that the question of arbitrability should be determined by an arbitrator; thus, the decision must be made by this Court.

"To determine whether the parties agreed to arbitrate this dispute, we ask two questions: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement."  *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014).  Holland and the plaintiffs do

---

[2] A complete copy of the Agreement has not been provided to the Court.  As a result, the contents of Section 2.6 of the Agreement are unclear.  However, no party has alleged that this dispute should be excluded from the ADR provision pursuant to Section 2.6.

not dispute that they entered into a valid agreement to arbitrate.  However, the plaintiffs argue that Holland waived his right to compel arbitration by retaining Barrett to send commercial affidavits on his behalf.

Under Fifth Circuit precedent, "a party waives its right to arbitrate if it (1) substantially invokes the judicial process and (2) thereby causes 'detriment or prejudice to the other party.'"  *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).  "To invoke the judicial process, a party 'must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'"  *Petroleum Pipe Amer. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)).  When determining whether a party has been prejudiced, a court should consider: "(1) whether discovery occurred relating to arbitrable claims; (2) whether time and expense were incurred in defending against a motion for summary judgment; and (3) whether the right to arbitrate was timely asserted." *Id.*  The party asserting waiver has a heavy burden of proof, because "[t]here is a strong presumption against finding a waiver of arbitration." *Id.*; *Al Rushaid*, 757 F.3d at 421-22.

Holland raised the plaintiffs' failure to pursue arbitration as a defense in his initial Answer and Counterclaim filed on September 29, 2014.  (Counterclaim at 19, ECF No. 16).  In his Amended Counterclaim, he also alleged that the plaintiffs had

violated the ADR portion of the Agreement by refusing to pursue arbitration after the parties' attempts to negotiate their dispute failed.  (Am. Counterclaim at 6, ¶31, ECF No. 47).  He explained that he did not have the financial means to pursue arbitration at that time, so Barrett utilized the non-judicial commercial affidavit process in an attempt to reopen negotiations with the plaintiffs.  (*Id.* at ¶¶32-33).  During argument at a hearing held on October 21, 2014, Holland also claimed that the plaintiffs had violated the ADR provision in the Agreement.

As explained previously, the plaintiffs have the burden of demonstrating that Holland waived the arbitration provision.  However, the plaintiffs have not identified any action by which Holland invoked the judicial process.[3]  While he has filed a Motion to Dismiss, an Answer and Counterclaims, and appeared at a hearing, he raised the arbitration provision on each of these occasions.  *See Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897-98 (5th Cir. 2005) (finding no waiver where the defendant filed a motion to dismiss contemporaneously with a motion for arbitration); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency*, 427 F.2d 924, 929 (5th Cir. 1970) (holding that defendant did not waive arbitration by filing counterclaim).  Moreover, contrary to the plaintiffs'

---

[3] The plaintiffs argue that the waiver determination should be made after they have participated in discovery.  However, they have not specified any issues related to waiver that cannot be determined prior to discovery, and the Court finds that there are no issues for which discovery is necessary, particularly since the waiver inquiry pertains to Holland's actions in this lawsuit and his efforts to utilize the commercial affidavit process, which are already a matter of record in this lawsuit.

assertions, Holland's attempt to pursue, through his alleged agent Barrett, the commercial affidavit process was not an attempt to obtain a decision on the merits of this dispute or an attempt to engage in the judicial process.  Finally, no discovery has been conducted in this lawsuit, and no motions for summary judgment have been filed.  Nevertheless, even if Holland had invoked the judicial process, the plaintiffs have not identified any prejudice that they have suffered.  As a result, the plaintiffs have not met their burden of demonstrating that Holland waived his right to demand arbitration.

The Court must next consider which claims raised in this lawsuit, if any, fall within the scope of the arbitration agreement.  *See Sharpe*, 769 F.3d at 914.  At this stage of the analysis, this Court must "apply the federal policy favoring arbitration and resolve ambiguities in favor of arbitration."  *Id.*  "[A]rbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."  *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990).  The Fifth Circuit has explained, "courts distinguish narrow arbitration clauses that only require arbitration of disputes arising out of the contract from broad arbitration clauses governing disputes that relate to or are connected with the contract."  *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).  "Broad arbitration clauses . . . are not limited to claims that literally arise under the contract but rather embrace all disputes between the parties having a

-9-

significant relationship to the contract regardless of the label attached to the dispute." *Id.* It is only necessary that the parties' dispute "touches" on matters covered by the agreement containing the arbitration clause. *Id.* However, "even broad clauses have their limits." *Id.* at 1067 n.8. When determining the scope of an arbitration clause, courts must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Harrison Cnty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 956 (Miss. 2013) (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (¶27) (5th Cir. 2004)).

The arbitration clause in the Agreement at issue covers "any controversy or claim arising out of or relating to this Agreement or the breach thereof." (Agreement, ECF No. 36-1). Thus, the clause would be considered broad under Fifth Circuit authority. *See Pennzoil*, 139 F.3d at 1067. The Court finds that the plaintiffs' request for a declaratory judgment certainly falls within the scope of the arbitration clause, because they seek certain interpretations of the Agreement in that claim. The Court further finds that all of Holland's counterclaims arise out of or relate to the Agreement, because all of those claims are based on Holland's allegation that Multiplan's clients were not entitled to discounts under the Agreement.

However, the plaintiffs' claims for injunctive relief and tortious interference present a closer question. These claims do not hinge on any particular

interpretation of the Agreement; rather these claims arose out of Barrett's conduct in utilizing the commercial affidavit process on behalf of Holland.  As a result, the Court finds that the plaintiffs' tortious interference claim and request for injunctive relief do not fall within the scope of the arbitration clause.[4]

Since only some of the claims presented in this lawsuit are arbitrable, the Court finds that a stay of those claims, as opposed to dismissal, would be most appropriate.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (asserting that dismissal of arbitrable claims is only permissible where all of the claims presented in a lawsuit are subject to binding arbitration).  The plaintiffs' request for declaratory judgment and Holland's counterclaims will be stayed while the parties' pursue arbitration of those claims.  The preliminary injunction imposed on October 21, 2014, remains in effect, and the plaintiffs' tortious interference claim against Barrett and Holland remain pending and will not be stayed.

### B.  PLAINTIFFS' TORTIOUS INTERFERENCE CLAIM

Holland also seeks dismissal of the plaintiffs' tortious interference with business relations claim pursuant to Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550

---

[4] The only claims the plaintiffs filed against Barrett were the tortious interference claim and request for injunctive relief.  Thus, it is not necessary to determine whether Barrett, a nonsignatory to the Agreement, should participate in the arbitration.

U.S. 544, 570 (2007)). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.'" *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In *Twombly*, the Court held that "heightened fact pleading of specifics" is not required, but "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 570. However, a court should not accept conclusory allegations, unwarranted factual inferences, and legal conclusions as true. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010). "When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment." *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998). However, a court may consider documents referenced in the complaint that are central to the plaintiff's claim without converting a motion to dismiss to a motion for summary judgment. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). While considering this Motion to Dismiss, this Court has reviewed exhibits to the Complaint, including correspondence sent to the plaintiffs and their clients by Barrett on Holland's behalf. Since these exhibits are referenced in the Complaint and are central to the plaintiffs' tortious interference claim, it is not necessary to convert Holland's Motion to a Motion for Summary Judgment.

In their Complaint, the plaintiffs allege that the defendants tortiously interfered with the plaintiffs' business relationships by sending letters of intent to file liens to the plaintiffs' clients.  While Barrett actually sent the letters, the plaintiffs allege, based on representations made in Barrett's letters, that he was acting as Holland's agent.  The plaintiffs also allege that Barrett filed or recorded a lien against one of their clients.  According to Barrett, the alleged basis for these liens was a "consensual default of a commercial affidavit."  (Compl., Ex. L, ECF No. 1-13).  The plaintiffs claim that these intentional acts were committed in an attempt to cause damage to the plaintiffs' business, because Barrett's letters contained threats directed at the plaintiffs' clients that referenced the clients' business relationship with the plaintiffs.  The plaintiffs further classify Barrett's letters as harassment.

Under Mississippi law, the following elements are necessary to prove a claim of tortious interference with a business relationship:

> (1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted.

*Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 15-16 (¶29) (Miss. 2007).  To prove actual damages, a plaintiff must demonstrate "(1) that his business experienced a loss, and (2) that the defendant was the cause of that loss."  *McBride Consulting Serv., LLC v. Waste Mgmt. of Miss., Inc.*, 949 So. 2d 52, 56 (¶11) (Miss. Ct. App. 2006).

In his Motion to Dismiss, Holland argues that he did not perform the acts that formed the basis of the plaintiffs' tortious interference claim; rather the acts were performed by Barrett.  However, Barrett claimed in correspondence referenced in the Complaint and attached as exhibits to the Complaint, that he was acting as Holland's agent when he committed the acts at issue.  "Under the law of agency, 'a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority.'"  *Andrew Jackson Life Ins. Co., v. Williams*, 566 So. 2d 1172, 1180 (Miss. 1990) (quoting *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987)).  Thus, if, as alleged by the plaintiffs, Barrett was Holland's agent, Barrett's acts may be imputed to Holland.

As explained previously, this Court must construe the plaintiffs' well-pleaded allegations as truthful at this stage of the proceedings.  Thus, the Court finds that the plaintiffs have stated a claim for tortious interference with business relations against Holland.[5]

## II.  THE PLAINTIFFS' MOTIONS TO DISMISS HOLLAND'S COUNTERCLAIMS

Since this Court has determined that Holland's counterclaims are subject to the arbitration clause contained in the Agreement and that those claims should be

---

[5] Holland also references this Court's prior refusal to impose a preliminary injunction against him, because the acts at issue were actually committed by Barrett.  In making that ruling, this Court merely found that it was not necessary to impose an injunction against Holland to prevent the alleged harmful conduct. The Court specifically noted that Holland may ultimately be held liable for Barrett's conduct.

stayed while the parties pursue arbitration, the plaintiffs' arguments seeking dismissal of Holland's counterclaims should be considered by an arbitrator. Thus, the Court finds that the plaintiffs' Motions to Dismiss Holland's Counterclaims should be denied.

## III.  BARRETT'S MOTION TO DISMISS

Barrett seeks dismissal of the plaintiffs' claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The plaintiffs claim that Barrett has waived his right to contest personal jurisdiction, because he filed an Answer to the Complaint without raising the lack of personal jurisdiction as a defense. However, Barrett notes that he denied the plaintiffs' allegation that this Court has personal jurisdiction in paragraph 8 of his Answer. (*See* Answer at 1 (¶8), ECF No. 17; Verified Compl. at 2 (¶8), ECF No. 1). He then filed a Motion to Dismiss contesting personal jurisdiction less than one month after he filed his Answer. (Def.'s Mot., ECF No. 35).

Fed. R. Civ. P. 12(b) provides:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19. A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed . . . .

Meanwhile, Fed. R. Civ. P. 12(h) provides that a party waives any defense listed in Rule (12)(b)(2)-(5) by "failing to either: (1) make it by motion under this rule; or (ii)

include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."

Considering Barrett's pro se status as well as the fact that he denied the Complaint's allegations of personal jurisdiction and filed a motion contesting personal jurisdiction soon thereafter, the Court finds that Barrett has not waived personal jurisdiction. *See McDermott v. Fedex Ground Sys., Inc.*, 520 F. Supp. 2d 254, 257-58 (D. Mass. 2007) (holding that defendants' mere denial of complaint's allegations of personal jurisdiction was sufficient to avoid waiver where defendants promptly filed motion to dismiss on that basis); *Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, No. 00CIV0201 (JSM), 2001 WL 1041990 at *3 (S.D.N.Y. Sept. 7, 2001) (holding that defendant's mere denial of personal jurisdiction allegation in complaint was sufficient to avoid waiver even where defendant waited another ten months before seeking dismissal). Therefore, this Court must determine whether it has personal jurisdiction over Barrett.

"A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law." *Paz v. Brush Eng'd Mat., Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). A court can only exercise jurisdiction if "(1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution." *Id.* Mississippi's long-arm statute provides:

> Any nonresident . . . . corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in

part by any party in this state, or who shall commit a tort in whole or
in part in this state against a resident or nonresident of this state, or
who shall do any business or perform any character of work or service
in this state, shall by such act or acts be deemed to be doing business
in Mississippi and shall thereby be subjected to the jurisdiction of the
courts of this state.

Miss. Code. Ann. § 13-3-57.  "Personal jurisdiction comports with due process when

first, the defendant has the requisite minimum contacts with the forum state and

second, requiring the defendant to submit to jurisdiction in the forum state would

not infringe on 'traditional notions of fair play and substantial justice.'" *Companion*

*Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi*

*Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)).

There is insufficient information in the record to enable this Court to make

these determinations.  As a result, the Court finds that the parties should be

permitted to conduct jurisdictional discovery limited to the question of whether this

Court can exercise personal jurisdiction over Barrett.  The plaintiffs have the

burden of making a prima facie showing that personal jurisdiction is proper.  *See*

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).  Thus, they

must file a supplemental brief regarding the issue of personal jurisdiction by

February 17, 2015.  Barrett may file a response in opposition to the plaintiffs' brief

by March 3, 2015.

## CONCLUSION

Since Holland and the plaintiffs agreed to arbitrate disputes related to the

Agreement between them, the plaintiffs' request for declaratory judgment and

Holland's counterclaims are stayed pending arbitration.  The Motions to Dismiss filed by Holland and the plaintiffs are therefore denied.  Barrett's Motion to Dismiss is taken under advisement pending jurisdictional discovery and additional briefing by the parties.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Motion to Dismiss Counterclaims of Steven Holland [39] filed by the plaintiffs, the Amended Motion to Dismiss Counterclaims of Steven Holland [43] filed by the plaintiffs, the Motion to Dismiss [48] filed by Steven Holland, the Amended Motion to Dismiss [50] filed by Steven Holland, and the Motion to Dismiss Amended Counterclaims of Steven Holland [59] filed by the plaintiffs are **DENIED**.  The plaintiffs' request for a declaratory judgment and Holland's counterclaims filed against the plaintiffs are **STAYED PENDING ARBITRATION**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion to Dismiss [35] filed by Kevin Barrett is **TAKEN UNDER ADVISEMENT**.  The plaintiffs must file a brief regarding the issue of personal jurisdiction by February 17, 2015.  Barrett may file a response in opposition to the plaintiffs' brief by March 3, 2015.

**SO ORDERED AND ADJUDGED** this the 30th day of December, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE