# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| MULTIPLAN, INC. and PRIVATE HEALTHCARE SYSTEMS, INC. | PLAINTIFFS/ COUNTER-DEFENDANTS |
| v. | CAUSE NO. 1:14CV315-LG-RHW |
| STEVEN W. HOLLAND, doing business as Physical Therapy Clinic of Gulfport | DEFENDANT/ COUNTERCLAIMANT |

## MEMORANDUM OPINION AND ORDER DENYING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are the [208] Motion for Summary Judgment filed by the plaintiffs/counterdefendants Multiplan, Inc., and Private Healthcare Systems, Inc. ("PHCS"), and the [212] Motion for Partial Summary Judgment filed by the defendant/counterclaimant Steven W. Holland, doing business as Physical Therapy Clinic of Gulfport. The parties have fully briefed the Motions.[1] After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Motion filed by Multiplan and PHCS should be granted in part and denied in part, and Holland's Motion should be denied.

## INTRODUCTION

This lawsuit arose out of a dispute between a physical therapist and two preferred provider organizations (PPOs). The Eleventh Circuit has explained:

---

[1] Multiplan and PHCS filed a [240] Motion to Strike Holland's response to their Motion for Summary Judgment, because Holland filed his response after the Court denied him an extension of time to respond. The Court has determined that Holland's response does not affect the outcome in this case; thus, the Motion to Strike is denied as moot.

> In essence, a PPO is a network of health care providers organized to offer medical services at discounted rates. The PPO providers furnish their services at discounted rates because they expect to receive a higher volume of patients, i.e., participants in the welfare benefit plan offered by the insurance company. The increase in the volume of patients is a result of third party payors, who pay the bills for medical services plan participants receive, directing plan participants to providers in the PPO network through marketing materials and financial incentives. Because third party payors, such as insurance companies, are financially responsible for the costs of a plan participant's covered medical care, it is in the third party payor's best interest for the plan participant to receive medical care from a provider who has promised to accept a discounted fee. The use of financial incentives and other measures to direct plan participants to providers in the PPO is known in the health care industry as "steerage."

*HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 987 (11th Cir. 2001), *overruled on other grounds by Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352 (11th Cir. 2008). "A silent PPO is a term of art for a kind of PPO abuse. Essentially, a silent PPO occurs when a payor receives a PPO discount to which he is not entitled." *Roche v. Travelers Prop. Cas. Ins. Co.*, No. 07-CV-302-JPG, 2008 WL 2875250, at *1 (S.D. Ill. July 24, 2008).

## FACTS

The parties do not dispute the following facts:

1. Holland was at all material times a board-certified licensed physical therapist in the state of Mississippi.

2. Holland owned and operated a small-business physical therapy practice, Physical Therapy Clinic of Gulfport ("PT Clinic of Gulfport"), located in Gulfport, MS.

3. Holland was the only physical therapist at PT Clinic of Gulfport, and he performed all patient care.

4. Multiplan and PHCS operated as PPOs.

5. Holland entered into a "PHCS Participating Professional Agreement" with PHCS, which had an effective date of September 1, 2006.

6. At the time Holland entered into the PHCS Agreement, he understood it to apply to standard group health insurance. Consistent with that understanding, PHCS did not offer workers' compensation network products at the time the agreement was entered into.

7. On October 18, 2006, Multiplan acquired PHCS as a wholly owned subsidiary.

8. Subsequent to Multiplan's acquisition of PHCS, Multiplan and PHCS continued to operate as separate corporations.

9. At all material times subsequent to Multiplan's acquisition of PHCS, the PHCS Network continued to exist as the PHCS Network, and PHCS continued to operate and maintain the PHCS Network. Likewise, subsequent to its acquisition of PHCS, Multiplan operated and/or maintained the Multiplan Network.

10. On or about June 26, 2007, PHCS sent a letter to Holland stating that Multiplan had acquired PHCS on October 18, 2006, and that PHCS was "expanding [Holland's] PHCS relationship to include participation with Multiplan on a complimentary basis." (*See* Holland's Mot., Exhibit 13 to Ex. B, ECF No. 228-2). In the section entitled "Changes to Your Contract," the letter stated that Holland's "existing individual agreement with [PHCS] continues in effect." (*Id.*)

11. On or about September 20, 2010, Multiplan entered into a contractual agreement with Healthcare Solutions, Inc., on behalf of itself and its affiliates Cypress Care, Inc., and Procura Management, Inc. Under this agreement, Procura is required to pay fees to Multiplan in exchange for renting access to the PPO discount rates designated by Multiplan in the Directory of Network Providers created by Multiplan and made available to Procura and its clients on Multiplan's website and distributed in a monthly file.

12. On April 25, 2011, Multiplan sent a letter to Holland stating that Multiplan had acquired Viant, Inc. in March 2010 and had since been "finalizing [its] plan to integrate Viant's Beech Street network into Multiplan's network offerings." In the section entitled "Your Participation with Multiplan," the letter states, among other things, that "[y]our individual contract with Multiplan continues in effect," and that "[o]ver the next 6-24 months, commercial clients accessing Beech Street will

> move their health plan members to Multiplan's network products which will significantly expand your access to patients." (Compl., Ex. B, ECF No. 1-3).
>
> 13. On or about September 1, 2011, Multiplan entered into a contractual agreement with Coventry Healthcare Workers' Compensation, Inc. Under this agreement, Coventry pays fees to Multiplan in exchange for renting access to the PPO discount rates designated by Multiplan in a "Provider List" it sends to Coventry on a monthly basis.
>
> 14. In approximately November or December 2011, Holland began noticing that certain EOBs accompanying payments he received from workers' compensation payers reflected that PPO discounts had been applied to claims for workers' compensation services, and that Multiplan was identified as the source of the PPO discounts.
>
> 15. Holland disputed the discounts, but his efforts were unsuccessful.
>
> 16. After multiple unsuccessful attempts to resolve the disputes personally, Holland retained Kevin Barrett, doing business as Quest Financial Recovery Services, to continue disputing the discounts.
>
> 17. Holland's status as network provider with PHCS and Multiplan was terminated on August 16, 2012.

(Compare Holland's Mem. at 5-18, ECF No. 228-17, with Multiplan/PHCS Mem. at 3-5, ECF No. 247).[2]

On August 13, 2014, Multiplan and PHCS filed this lawsuit against Holland and Barrett seeking a declaratory judgment that Multiplan "had the contractual right to offer discounts given by Holland in the Agreement to its clients in a workers' compensation setting." (Compl. at 14, ECF No. 1).[3] Multiplan and PHCS also asked the Court to enjoin Holland and Barrett from continuing to pursue

---

[2] Multiplan and PHCS argue that some of these undisputed facts are immaterial.
[3] This Court dismissed the claims filed against Barrett for lack of personal jurisdiction in an [75] Order entered on March 20, 2015.

extrajudicial remedies, such as commercial liens, against Multiplan, PHCS, and their clients. They also filed a tortious interference with business relations claim due to Holland and Barrett's communications with the clients of PHCS and Multiplan.

Holland has asserted the following counterclaims against Multiplan and PHCS: violations of RICO, Unjust Enrichment, Civil Conspiracy, Common Law Fraud, Accounting, Disgorgement, and Breach of Contract. (3d Am. Countercl., ECF No. 106). On July 25, 2016, this Court issued a [120] Memorandum Opinion and Order dismissing Holland's RICO, unjust enrichment, common law fraud, and accounting claims pursuant to Fed. R. Civ. P. 12(b)(6). Holland now seeks partial summary judgment in his favor as to Multiplan and PHCS's liability for his counterclaims. Multiplan and PHCS seek summary judgment in their favor as to Holland's counterclaims.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon

mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I. BREACH OF CONTRACT

### A. WHETHER THE PHCS AGREEMENT WAS AMENDED TO INCLUDE MULTIPLAN

Holland argues that the PHCS Agreement was not properly amended to include Multiplan. Thus, he claims that Multiplan and its clients impermissibly applied discounts to claims for services provided by Holland. The PHCS Agreement provides:

> 3.7 <u>Product Participation and Requirements.</u> Product Participation and Requirements. This Agreement may contain references to each of the products offered by PHCS. Upon written notice to Participating Professional, PHCS will, in its sole discretion, designate those individual product(s) for which Participating Professional participates as part of its PHCS provider network.

(Holland's Mot., Ex. E, § 3.7, ECF No. 228-5). Section 7.4 of the Agreement permitted Holland to reject modifications to the Agreement within thirty days from the effective date of the notice. (*Id.*, § 7.4). Holland admits that he received notice in June 2007 that Multiplan's network had been added to the PHCS Agreement, and he does not dispute that he failed to reject the modifications within thirty days. However, he argues that only products that are part of the PHCS network could be added, due to the Agreement's repeated reference to the "PHCS provider network."[4]

---

[4] For example, the Agreement defines "Payor" as "an insurance company, employer health plan, Taft-Hartley Fund, or other organization liable to pay or arrange to pay

-6-

He claims that the Multiplan and PHCS networks remained separate, and thus Multiplan's network could not be added to PHCS's network.

When interpreting a contract, "the Court analyzes the express wording of the contract and enforces the plain meaning where there is no ambiguity." *Reynolds v. Allied Emergency Servs.*, 193 So. 3d 625, 633 (Miss. 2016). The parties do not dispute that Multiplan acquired PHCS, such that PHCS became a wholly-owned subsidiary of Multiplan. The June 2007 notice stated "we're expanding your PHCS relationship to include participation with Multiplan on a complementary basis." (Holland's Mot., Ex. 13 to Ex. B, ECF No. 228-2). Nothing in the record before the Court indicates that the Agreement could not be amended by notice to add PHCS's new parent company. Holland also has failed to provide any authority that supports his position that Multiplan could not be added to the Agreement.[5] Therefore, the Court finds that the Agreement was properly amended to add Multiplan.

### B. WHETHER PHCS AND MULTIPLAN BREACHED THE PHCS AGREEMENT BY FAILING TO PROVIDE STEERAGE

Holland argues that, even if the PHCS Agreement included Multiplan, PHCS and Multiplan breached the Agreement by failing to provide steerage, in exchange for discounts received. The Eleventh Circuit has explained:

---

for the provision of health care services to Covered Individuals through *a PHCS provider network*." (Holland's Mot., Ex. E, § 1.5, ECF No. 228-5) (emphasis added).
[5] Holland argues that Multiplan asserted that it had no contract with a provider in another case, but it is unclear whether any of the contracts at issue in the other case were amended by notice.

> Steerage means actively encouraging plan participants to seek the services of the providers in the PPO by such means as financial incentives. Financial incentives include reduced co-payment and deductible amounts when the participant uses a preferred provider. Steerage also occurs through communication efforts such as providing participants with a list of preferred providers, a hotline to inform and refer participants to preferred providers, and issuing identification cards designed to inform providers that a patient is a participant eligible for the PPO discount.

*HCA Health Servs.*, 240 F.3d at 1003.

The Agreement at issue in the present case contains the following requirement for steerage, which is also known as direction:

> 4.5 <u>Marketing</u>. PHCS will require each Payor to make available and promote Contracts which provide Direction to Preferred Providers. Direction may occur through, but is not limited to, (i) greater plan benefits, (ii) access to lists or directories of Preferred Providers in printed form or by phone or website, or (iii) the provision of financial incentives that provide Covered Individuals with savings when they obtain health care services from Preferred Providers.

(Holland's Mot., Ex. E, § 4.5, ECF No. 228-5). The Agreement defines the term "Payor" as "an insurance company, employer health plan, Taft-Hartley Fund, or other organization liable to pay or arrange to pay for the provision of health care services to Covered Individuals through a PHCS provider network." (*Id.* at § 1.5). The term "Covered Individual" is defined as "any individual and/or dependent covered by a Contract." (*Id.* at § 1.3). "Contract" "means any insurance policy, benefit plan or other health plan or program that includes Direction (as defined in Section 4.5) to Preferred Providers." (*Id.* at § 1.1).

The June 26, 2007 Notice that amended the Agreement to add Multiplan also provides for steerage, because it included the following language:

-8-

> As a "complementary" network, Multiplan directs members to you just as a primary PPO does — through online and downloadable directories, direct links from our clients' websites, and assistance with client-sponsored member education.

(Holland's Mot., Ex. 13 to Ex. B, ECF No. 228-2).

Holland argues that PHCS and Multiplan wrongfully used Holland's discount rate on workers' compensation claims, because Mississippi workers' compensation statutes and regulations effectively eliminate steerage. Miss. Code Ann. § 71-3-15(3) provides:

> Any employee receiving treatment or service under the provisions of this chapter may not be held responsible for any charge for such treatment or service, and no doctor, hospital or other recognized medical provider shall attempt to bill, charge or otherwise collect from the employee any amount greater than or in excess of the amount paid by the employer, if self-insured, or its workers' compensation carrier.

Since workers' compensation patients are not financially responsible for any charges for treatment, a PPO network cannot direct these patients to preferred providers by providing "financial incentives that provide Covered Individuals with savings when they obtain health care services from Preferred Providers." (*See* Holland's Mot., Ex. E, ECF No. 228-5). Therefore, this method of steerage identified by the Agreement is inapplicable in the present case.

Holland also argues that PHCS and Multiplan did not in fact provide steerage, because all of Holland's workers' compensation patients were directly referred to Holland by the patients' physicians. Mississippi workers' compensation law provides:

> The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1)

competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment. Referrals by the chosen physician shall be limited to one (1) physician within a specialty or subspecialty area.

Miss. Code Ann. § 71-3-15(1). "Therefore, under the statute, the employee has the right to choose one competent physician and such other specialist to whom he is referred by his physician." *Mosby v. Farm Fresh Catfish Co.*, 19 So. 3d 789, 795 (¶14) (Miss. Ct. App. 2009). "However, treatment rendered by a physician or referrals from a physician other than the original treating physician that have not been approved are not the responsibility of the employer or its insurance carrier." *Id.* (internal quotation marks and brackets omitted). Holland also cites the following provision in the workers' compensation fee schedule:

> Physical or occupational therapy services . . . shall be provided upon referral from a physician. In the absence of specific direction from the treating or prescribing physician the selection of a provider for these services shall be made by the payer in consultation with the treating or prescribing physician.

Miss. Workers' Comp. Comm'n Fee Schedule, Section X: Selection of Providers (Aug. 1, 2008 Update). Thus, the selection of a physical therapist is generally made by the treating physician, but can be made by the payer — the employer or insurer — in consultation with the treating or prescribing physician.

Holland has testified by affidavit that each of the patients at issue in this lawsuit was directly referred to him by the patient's treating physician. He explained that:

> [t]hese referrals consisted of prescriptions sent by the treating physicians to my office via facsimile, printed on PT Clinic of Gulfport prescription pads, identifying the patient being referred, the diagnosis,

and the prescribed treatment protocols, in addition to some
prescriptions that were given to patients in paper-form by their
treating physicians, consisting of the same categories of information,
with instructions to bring the prescription with them to my office.

(Holland's Mot., Ex. D at 3, ECF No. 228-4). In their Memorandum filed in response to Holland's Motion for Partial Summary Judgment, Multiplan and PHCS have admitted that they "do not have the knowledge to admit or deny whether the allegations here are accurate, and Holland has failed to submit any competent evidence to substantiate these claims." (Compare Holland's Mem. at 5-18, ECF No. 228-17, with Multiplan/PHCS Mem. at 3-5, ECF No. 247). Contrary to Multiplan and PHCS's assertions, the Court finds that Holland's affidavit is competent evidence that the patients were referred directly by their physicians. In addition, three of his patients have testified by affidavit that they were referred to Holland directly by their physicians. (Holland's Reply, Ex. H-J, ECF Nos. 249-1, 249-2, 249-3). These patients also testified that they were never given any incentive to visit Holland's clinic and that they had never heard of Multiplan or PHCS. (*Id.*)

PHCS and Multiplan also failed to comply with the following provision in the Agreement:

4.4 <u>Identification and Eligibility.</u> PHCS will require each Payor to
furnish Covered Individuals with a means of identifying themselves to
Participating Professional as covered under a Contract for the
provision of the health care services through a PHCS provider
network. Such methods of identification may include, but are not
limited to, (i) identification cards that indicate an affiliation with
PHCS, (ii) affixing the PHCS logo to identification cards, or (iii) a
PHCS phone number identifier.

(Holland's Mot., Ex. E, ECF No. 228-5). The June 26, 2007 Notice that amended the Agreement to add Multiplan states: "Simply accept patients with ID cards showing one of the PHCS or Multiplan network logos on the enclosed reference card, and then send your claims as usual following the instructions on the back of the member's ID card." (Holland's Mot., Ex. 13 to Ex. B, ECF No. 228-2). PHCS and Multiplan admit that workers' compensation patients "are not going to present an ID card." (Holland's Mot., Ex. C at 133, ECF No. 228-3). Thus, PHCS and Multiplan agreed to require ID cards, even though they admit that ID cards are never provided by workers' compensation patients. This raises a question of whether the Agreement, as amended, can be construed to apply to workers' compensation claims. Furthermore, this language in the Agreement and Notice could have misled Holland.

PHCS and Multiplan argue that they provided steerage because they require payors to timely pay claims. However, requiring payors to timely pay claims does not arguably constitute "direction" under the Agreement, nor does it fall within any definition of "steerage" located by this Court. As the PHCS Agreement explains: "PHCS will require each Payor to make available and promote Contracts which provide Direction to Preferred Providers." (Holland's Mot., Ex. E, ECF No. 228-5). The Agreement then gives examples of ways in which the payor may encourage covered individuals to see the preferred provider. (*See id.*) As the Eleventh Circuit has held, "even if a provider receives expedited payment, he is still deprived of the

-12-

benefit of his bargain when his expectation of steerage is not satisfied." *HCA Health Servs.*, 240 F.3d at 1003 n.46.

In addition, Multiplan's Regional Director, Shawn McLaughlin, has testified that:

> It is common practice for an injured worker to seek information on who provides workers' compensation care, and consult with adjusters and/or nurse case managers regarding which providers offer workers' compensation care. The adjusters and nurse case managers use soft channeling referrals to participating providers through online directories and directories posted in the work place. Multiplan provides such directories to its clients.

(Multiplan/PHCS Resp., Ex. B, ECF No. 246-2). Although he admits that injured workers have no financial incentive for choosing a preferred provider, he states that these workers "have assurance and peace of mind knowing that participating providers in the workers' compensation network are credentialed and qualified to offer necessary workers' compensation care." (*Id.*) He also testifies that "adjusters, nurse case managers and online directories of participating providers are essentially the only resources to assist the injured worker in finding a provider who they know will treat them when the [sic] present themselves for treatment." (*Id.*)

After considering all of the parties' arguments and evidence, the Court finds that the issue of whether Multiplan and PHCS provided the steerage, or direction, required by the Agreement should be decided by a jury. The Court is concerned that Holland may have received no benefit from his relationship with the PPOs in this case, and that the PPOs may have taken discounts for patients that would have gone to Holland for physical therapy regardless of the PPOs' actions. Therefore, the

parties' motions seeking summary judgment as to Holland's breach of contract counterclaim are denied.

## II. CIVIL CONSPIRACY

Holland also argues that Multiplan and PHCS engaged in a civil conspiracy. "To establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, [and (4)] damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013). Since the Court finds that genuine issues of material fact exist as to whether Multiplan and PHCS provided the required steerage under the Agreement, the Court finds that the parties' motions seeking summary judgment as to Holland's civil conspiracy counterclaim must be denied.

## III. DISGORGEMENT

Holland has asserted a claim for disgorgement. "Disgorgement is an equitable forfeiture of benefits wrongfully obtained . . . ." *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015). An inadequate remedy at law is a necessary prerequisite to claims seeking equitable relief. *See Ward v. Life Investors Ins. Co.*, 383 F. Supp. 2d 882, 886 (S.D. Miss. 2005).

Holland has not demonstrated that he has no adequate remedy at law. If a jury finds that PHCS and Multiplan breached the Agreement and/or engaged in a civil conspiracy, he will be able to recover compensatory damages. Therefore, Multiplan and PHCS are entitled to summary judgment as to this claim.

## CONCLUSION

Genuine issues of material fact prevent the Court from granting summary judgment as to Holland's counterclaims for breach of contract and civil conspiracy. However, PHCS and Multiplan are entitled to summary judgment as to Holland's counterclaim for disgorgement. To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter this result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [208] Motion for Summary Judgment filed by the plaintiffs/counterdefendants Multiplan, Inc., and Private Healthcare Systems, Inc., is **GRANTED** as to Steven W. Holland's counterclaim for disgorgement and **DENIED** in all other respects.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the [212] Motion for Partial Summary Judgment filed by the defendant/counterclaimant Steven W. Holland, doing business as Physical Therapy Clinic of Gulfport is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that [240] Motion to Strike Steven W. Holland's [239] Response is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 6th day of February, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE